IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JAMES E. SMITH,

    Plaintiff,

v.                                                                        No. 1:15-cv-01170-JDB-egb

CHESTER COUNTY BOARD
OF EDUCATION

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, James E. Smith, brought this action against Defendant, the Chester County Board of Education ("CCBOE"),[1] on July 15, 2015, alleging a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (D.E. 1.) Plaintiff claims that he was discriminated against based upon his age when he was not selected by the CCBOE for the position of automotive technology teacher. (D.E. 34-1 at 1.) Before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 31.) Smith has responded to the motion, D.E. 34, and Defendant has filed a reply, D.E. 35, making the matter ripe for disposition. For the reasons discussed below, the Motion is DENIED.

---

[1] The original complaint named Chester County, Tennessee as an additional defendant. (D.E. 1.) Plaintiff voluntarily dismissed his claim against the county on September 9, 2015, D.E. 11, and submitted an amended complaint on April 14, 2016, D.E. 29.

1

**I.    BACKGROUND**

The following facts are undisputed unless otherwise noted.  In early January 2012, the CCBOE began seeking a new teacher for Chester County High School's automotive technology program.  Harvey Rimmer, the "auto tech" teacher at the time, had recently announced that he would retire at the end of the 2011-2012 school year.  On January 12, 2012, the Chester County Independent newspaper published an article describing the program and reporting on the upcoming vacancy.  Plaintiff, a sixty-four-year-old resident of Chester County, read this article and decided to apply for the position.

Smith had previously worked for General Motors for thirty years, holding a variety of jobs, including assembly line worker, service engineer, warranty consultant, and area service manager.  Plaintiff also had relevant formal education: an associate's and a bachelor's degree in automotive and heavy equipment repair.  Since 2005, he only had been engaged in farming.

**A.    Plaintiff's Interactions with School Board Employees**

On January 20, 2012, Smith went to the Board of Education office to apply for the teaching position.  There he submitted his application and résumé, and briefly met with Cherrie Pipkin, the Director of Schools for the CCBOE.[2]  Pipkin held the primary responsibility for deciding whom to hire.  During this interview, Pipkin asked Plaintiff how much longer he planned to work.  Plaintiff avers that Pipkin prefaced this question by making note of his age, with the remark, "you're 64, how much longer are you going to work[?]"  (Smith Deposition ("Dep.") at 24:12–16, D.E. 32-6.)  Defendant denies that Pipkin explicitly mentioned Plaintiff's age during the interview.  (D.E. 35 at 4; *see* Pipkin Dep. at 229–230, D.E. 32-1.)  Smith also

---

[2] This position appears to be identical to that of superintendent, and the parties agree elsewhere that Pipkin was the "then-Superintendent" of the CCBOE.  (D.E. 35 at 5.)

claims that he replied that he "was in perfect health, and . . . would probably work until [his] eighties or nineties."[3] (Smith Dep. at 24:18–20, D.E. 32-6.)

Pipkin also suggested that Plaintiff sit in on Rimmer's auto tech class. After the interview, he went to Chester County High School and observed one of the classes. There he also spoke with the principal, Ken Kilzer, about the job.

### B. Other Candidates for the Position

In addition to Plaintiff, the Board considered two other candidates: James Carter and Michael Prather.[4] Both were interviewed by Pipkin and Kilzer in April of 2012. Carter, who was forty-two years old, had originally approached Pipkin at a high school football game in the fall of 2011 to inform her that he was interested in the position. The two had known each other since Carter's youth. He was a graduate of Chester County High School and had children in the school system. He had worked in the automotive industry since 1997.

At Pipkin's suggestion, Carter observed Rimmer's classes on three or four occasions, and after speaking with Pipkin again about his interest in the position, he became a substitute teacher at the high school. Over the course of the spring 2012 semester, Carter substitute taught on seventeen occasions. By contrast, Plaintiff only observed Rimmer's class once and never substitute taught any classes at the high school.

The parties dispute the extent to which Plaintiff received information and instructions regarding the next step in his application. Smith claims that he was neither contacted about substitute teaching nor told how to become an eligible substitute. (D.E. 34-1 at 9.) Defendant

---

[3] The parties also disagree as to whether Pipkin informed Plaintiff during the interview "that the Board already had a qualified applicant that the Board of Education was interested for the position." (D.E. 34-1 at 9.) Defendant asserts that she did; Plaintiff contends that she did not. (*Id.* at 9–10.)

[4] According to his application, Prather was forty-six years old when he applied for the auto tech teaching position. (D.E. 32-2 at 27.)

3

contends that Plaintiff was given substantially the same information and guidance as Carter but did not act on it in the same way or otherwise demonstrate the enthusiasm that Carter did. (*See generally* D.E. 31-1.)

On April 11, 2012, Pipkin sent an email to Rimmer, asking him for his opinion of James Carter. (D.E. 32-4 at 73.) Rimmer's reply is reproduced below in its entirety:

> I think he will be GREAT! He is what I had in mind when I told you that I would be leaving. I think a young instructor will be a great asset to the automotive program. He is very knowledgeable and qualified. He has been subing [sic] for Mr. Karnes and myself and should know what it will be like to be in a classroom. He seems to have the respect of the students. I hope that he gets the job and will continue to work with him in what ever [sic] way that I am able.
> Thanks
> Harvey

(*Id.*) After receiving this email, Pipkin thanked Rimmer for his feedback. (*Id.*)

The Board selected Carter for the position on April 30, 2012, and he obtained his teaching license the next month. Plaintiff filed suit in this Court on July 15, 2015.

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("Credibility determinations . . . and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson*, 477 U.S. at 255)).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23; *see In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Finally, although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v. Cadon Plating and Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("[A] court must view the evidence 'in the light most favorable to the opposing party.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970))).

### III. ANALYSIS

#### A. ADEA Standards

The ADEA "makes it unlawful for an employer to take adverse action against an employee 'because of such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 167 (2009) (quoting 29 U.S.C. § 623(a)). It also prohibits an employer from failing or refusing to

hire a prospective employee because of her age. 29 U.S.C. § 623(a)(1). To establish a disparate-treatment claim under the ADEA, a plaintiff bears the burden of proving by a preponderance of the evidence that her age was the "but-for" cause of the adverse employment action. *Gross*, 557 U.S. at 177. "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180.

A plaintiff can meet this burden by presenting either direct or circumstantial evidence. *Id.* at 177–78. Direct evidence is that which "proves the existence of a fact without requiring any inferences." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 530 (6th Cir. 2014) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). "[I]f believed, [it] requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Determining whether a statement constitutes direct evidence of age discrimination requires an evaluation based on the following factors:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the [adverse employment action].

*Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)).[5] No single factor is necessarily dispositive and courts should "tak[e] all of the circumstances into account." *Peters*, 285 F.3d at 478.

---

[5] Because the Sixth Circuit first "expressly spelled out these considerations as a formal standard" in *Cooley v. Carmike Cinemas, Inc.*, the Court refers to it as the "*Cooley* test." 25 F.3d at 1330.

6

Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger*, 579 F.3d at 620 (quoting *Wexler*, 317 F.3d at 570). Plaintiffs who rely on circumstantial evidence to prove age discrimination must satisfy the four-part *McDonnell Douglas* test:

> [A] plaintiff first must establish a prima facie case by showing that (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and (4) the successful applicant was substantially younger than the plaintiff.

*Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once a plaintiff meets this burden, the employer must "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010). If the employer is able to do so, the burden shifts back to the plaintiff to demonstrate that the reason given by the employer is "a mere pretext for intentional age discrimination." *Id.* Keeping consistent with *Gross*, this burden-shifting framework does not absolve a plaintiff of his ever-present responsibility to prove that age was the "but for" cause of the adverse employment action. *Id.* (quoting *Geiger*, 579 F.3d at 620).

These two "evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Scheick*, 766 F.3d at 529 (quoting *Kline v. TVA*, 128 F.3d 337, 348–49 (6th Cir. 1997)). Under both frameworks, "[t]he ultimate question . . . is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).

**B.** **Pipkin's Age-Related Comment During the Interview with Plaintiff**

Smith argues that Cherrie Pipkin's remark during their interview, which Plaintiff recounts as "you're 64, how much longer are you going to work," constitutes direct evidence of age

discrimination. Accordingly, the Court analyzes this statement under the framework provided by *Cooley*. *See* 25 F.3d at 1330.

### 1. Identity of the speaker and relation to the decision-making process

"In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998). Cherrie Pipkin was the superintendent at the time of the interview.[6] According to Troy Kilzer, while others may provide feedback and participate in the interviews of candidates, "the superintendent makes the decision about who will be hired." (Kilzer Dep. at 24:2–3, D.E. 32-3; *see also id.* at 23:17–20 (stating that the decision to interview certain candidates "rests with the superintendent").) This evidence establishes that Pipkin qualified as both a "decision-maker" and "an agent [of Defendant acting] within the scope of [her] employment," as she made the statement at issue during the interview of a candidate for the open teaching position. *Peters*, 285 F.3d at 478. The parties do not appear to dispute this point.

The comment also "related to the decision-making process." First, the attendant circumstances of the statement's utterance reflect a relevance to the hiring process. Rather than an offhand comment in the hallway, Pipkin made the statement during an interview for an open teaching position with a qualified candidate. Defendant implicitly concedes that the content of the statement related to the decision-making process by arguing that "a company has a legitimate interest in learning its employees' plans for the future." (D.E. 31-1 at 14 (quoting *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992)). By making a note of Plaintiff's age and inquiring about his plans for retirement, Pipkin was attempting to determine how much longer

---

[6] Pipkin retired in July 2014, and Troy Kilzer, who previously served as the principal of Chester County High School, assumed the position of superintendent. (Kilzer Dep. at 8, D.E. 32-3.)

Plaintiff planned to work, a consideration she thought relevant to the qualifications for the position.

### 2. Whether the statement was more than merely vague, ambiguous, or isolated

The CCBOE contends that Pipkin's remark concerned retirement, not age, and therefore does not relate to age at all. "[A]n aspect of employment that could correspond to age . . . could be a legitimate basis to distinguish among employees . . . as long as the other feature is 'analytically distinct' from age." *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 799 (6th Cir. 2013) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)). Because "an employer can take account of one while ignoring the other . . . it is incorrect to say that a decision based on years of service [for example] is necessarily 'age based.'" *Hazen Paper*, 507 U.S. at 611. This type of distinction can be made between an individual's age and the number of years until retirement, as "a standalone reference to retirement does not necessarily invoke age." *Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 331 (6th Cir. 2012). In *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243 (6th Cir. 1997), the Sixth Circuit affirmed summary judgment against the plaintiff where the defendant employer repeatedly asked him about his plans for retirement, "to the point that [the plaintiff] believed he was being pressured to retire." 112 F.3d at 247. The court "found Woythal's argument unavailing, in large part because no one at Tex–Tenn made direct references to Woythal's age." *Sharp*, 726 F.3d at 799–800.

The statement at issue in this case is not as vague or ambiguous. According to Plaintiff's version of events, Pipkin directly referenced his age by saying, "you're 64 . . . ." Unlike a mere inquiry into retirement plans, this statement does not require an inference in order to conclude that Pipkin considered age as a motivating factor. The Sixth Circuit held in a similar case that

9

"62" is synonymous with "age." If [supervisor] Laney had simply inquired into [plaintiff] Hale's retirement status or stated that Hale had been at ABF "long enough" without any attendant reference to his age, this case may well have fallen under the logic of *Hazen Paper*, which instructs that "it is incorrect to say that a decision based on years of service is necessarily 'age based.'" But Laney's alleged statement shows that her decision was based not on an age-correlated factor but on age itself.

*Hale*, 503 F. App'x at 332 (citation omitted).[7] The cases cited by Defendant turn on this critical point. *Colosi v. Electri–Flex Co.*, 965 F.2d 500 (7th Cir. 1992), "involved employer inquiries into the employee's retirement plans, and there was no direct discussion of age." *Sharp*, 726 F.3d at 800. In *Rowan v. Lockheed Martin Energy Systems, Inc.*, the court found that the defendant's legitimate "concern about impending retirements of nuclear scientists and skilled workers is not the same as a bias against age," making an "analytical[] distinct[ion]" under *Hazen Paper*. 360 F.3d at 548.

In *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8 (1st Cir. 1998), the First Circuit characterized a district manager's inquiry into the plaintiff employee's age and retirement plans as "a textbook example of an isolated remark which demonstrates nothing." 155 F.3d at 13. The court explained that it did so not because of the content of the statement, however, but because the plaintiff had "adduced no evidence that [district manager] Hughes had authority to determine whether [plaintiff] Shorette was to be retained by Rite Aid, nor that Hughes played any role in the decision to demote Shorette to key cashier." *Id.* By contrast, Cherrie Pipkin, as superintendent, did have the authority to determine whether Plaintiff would be hired as the new auto tech teacher. Indeed, she was the primary decision-maker involved in the hiring. This case

---

[7] While Pipkin's statement is not as damning as the supervisor's statement in *Hale*, it nevertheless constitutes direct evidence showing that Pipkin's concerns about Plaintiff's number of years left in the workforce were based on his age. *See id.* at 331 ("He is going to leave here when he is 62. I am going to see to it. He has been here long enough, and he is going to go on his social security.").

is relevant to the first factor of the *Cooley* test, rather than the third, and even in that context does not support Defendant's argument.

Returning to the wording of the third factor of the *Cooley* test, Pipkin's remark was not isolated, as Plaintiff has also presented evidence of age-related comments made by the previous auto tech teacher, Harvey Rimmer, and either Pipkin or Troy Kilzer during James Carter's interview for the same position. (*See infra* Sections C–D.)

### 3. Proximity in time to the adverse employment action

Pipkin's comment occurred during her interview with Plaintiff in January of 2012, while the final decision to hire James Carter was not made until late April. Time periods in which courts have found too remote include one year prior to termination, *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993), a three-year period over which two remarks were made, *McDermott v. Cont'l Airlines, Inc.*, 339 F. App'x 552, 556 (6th Cir. 2009), and "one stray statement allegedly made seven years before the adverse decisions . . . ." *Rowan*, 360 F.3d at 549. Here, the exact date of the comment has been determined. Moreover, the interview took place during the period in which the position of auto tech teacher remained open and the Board was actively soliciting applications and candidates. On balance, this factor also cuts in favor of Plaintiff.

Taking into account all of the circumstances surrounding the comment, superintendent Pipkin's explicit reference to Plaintiff's age constitutes direct evidence of age discrimination. It occurred during their only personal meeting, in the context of a hiring discussion, during the time the Board was seeking to fill the position.

####	4.	The factual dispute as to the comment itself

While Defendant admits that Pipkin asked Plaintiff how long he intended to work, it denies that Pipkin explicitly referenced his age at all.  "In ruling upon a Rule 56 motion, a District Court must resolve any factual issues of controversy in favor of the nonmoving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990) (internal quotation marks omitted)).  In this instance, both parties have alleged contradictory facts and supported them with deposition testimony.  A factual dispute therefore exists, and if it is a "genuine dispute" under Rule 56, summary judgment must be denied.

###	C.	Rimmer's Email to Pipkin

The Court need not consider whether Pipkin's comment, standing alone, would be enough for Plaintiff to defeat summary judgment, as Plaintiff advances additional evidence of age discrimination, viz., Harvey Rimmer's statement in an email to Cherrie Pipkin regarding James Carter that "I think a young instructor will be a great asset to the automotive program." "[W]here the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation . . . ." *Ercegovich*, 154 F.3d at 356.  Again, the Court turns to the *Cooley* test to determine whether this constitutes direct evidence of age discrimination.

####	1.	Rimmer's role in the decisional process

The identity of the speaker is a more nuanced issue here than with Pipkin's statement. "'[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden . . .' of demonstrating

animus." *Bush*, 161 F.3d at 369 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)) (alterations in original); *see also Scheick*, 766 F.3d at 531 ("[A] statement by supervisor with no involvement in the decision was not direct evidence of age discrimination." (citing *Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 589–90 (6th Cir. 2003))).[8] On the other hand, "[d]iscriminatory remarks by decision makers and those who significantly influence the decision-making process can constitute direct evidence of discrimination." *Sharp*, 726 F.3d at 798. In evaluating the actions of a non-decision maker, "a biased employee's 'position [of] influence' is probative of that employee's ability to influence the ultimate decisionmaker." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 353 (6th Cir. 2012) (quoting *Ercegovich*, 154 F.3d at 355). This includes, for example, being "involved in some parts of the discussion" regarding the adverse employment action. *Chattman*, 686 F.3d at 353.

During the hiring process, Rimmer personally met with both Plaintiff and Carter when they observed his classes. (Rimmer Dep. at 29:18–19, D.E. 32-4; *see also* Carter Dep. at 25:14–20, D.E. 32-5 (discussing several separate meetings between Carter and Rimmer).) More importantly, Rimmer's email, in which he wrote, "I think a young instructor will be a great asset to the automotive program," was not unsolicited. Rather, Pipkin affirmatively sought out Rimmer's opinion of one of the candidates and later thanked him for providing her with feedback. (D.E. 32-4 at 73). According to Rimmer, the two also had "verbal conversations" that regarded Plaintiff and related to the decisional process. (Rimmer Dep. at 39:10, D.E. 32-4.) Pipkin's deposition testimony is consistent with Rimmer's account, as she confirms that she sought out his opinion and knew that "he had some working relationship with Mr. Carter . . .

---

[8] Rather, "statements made by nondecisionmakers . . . are more appropriately analyzed as circumstantial evidence." *Geiger*, 579 F.3d at 622 (citing *Rowan*, 360 F.3d at 550).

during that particular school year." (Pipkin Dep. at 142:16–18, D.E. 32-1.) While high school teachers may not typically have a hand in selecting their replacements, the evidence presented to the Court supports a reasonable inference that Rimmer had a significant influence in the decision-making process of hiring the new auto tech teacher.

### 2. Other factors under *Cooley*

Addressing the second prong of the *Cooley* test, while Rimmer's comment did not concern Plaintiff specifically, it directly related to the decision-making process of filling the position to which he applied. Situationally, Rimmer was replying to a direct request from a superior regarding his opinion of one of the candidates, about whom he had personal knowledge. Substantively, Rimmer's email contained a glowing recommendation of Carter and laid out, point by point, the reasons why he thought Carter was qualified for the position, including his youth. While this comment did not concern Plaintiff directly, it provided an age-based contrast with Plaintiff. Temporally, the email exchange between Pipkin and Rimmer occurred on April 11, 2012, roughly three weeks before Carter was selected as the new automotive technology teacher. Two of the three candidates for the position were interviewed during that time.

As for the third factor of the *Cooley* test, Rimmer's comment is not vague or ambiguous in the sense that it explicitly references age. Whether it demonstrates discriminatory animus, however, is less clear. In *Sharp v. Aker Plant Services Group, Inc.*, the court found that the plaintiff's supervisor "informed Sharp he had picked [another employee to train for a new position] because he was younger than Sharp," which constituted direct evidence of discrimination. 726 F.3d at 800. In *Scheick v. Tecumseh Public Schools*, the court held thus:

> In contrast, McAran's other two statements about wanting "someone younger" are not ambiguous and, if believed, do not require an inference to conclude that age was the but-for cause of the decision not to renew Scheick's contract. First, the statements by McAran to Scheick on February 26 and March 15, respectively,

14

represent direct references to age. *See Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 794 (6th Cir.2013) (involving statement "we want someone younger"). Moreover, the statements are not ambiguous despite the lack of an explicit statement that "the Board" wanted someone younger.

766 F.3d at 531. Rimmer's comment, while a direct reference to age, is not as explicit as the statements found to constitute direct evidence in *Sharp* and *Scheick*. In context, Rimmer clearly mentions Carter's relative youth as a positive trait, but does not go so far as to declare that the Board should hire a young person or that younger people are more qualified.

Whether Rimmer's comment constitutes direct evidence of age discrimination is a close question. Considering the totality of the circumstances, as the *Cooley* test requires, Rimmer's comment possesses a more indirect character for several reasons. Rimmer, while still substantially involved in the decision-making process, was not the primary decision-maker, the comment itself was not as explicitly discriminatory as others cited by the Sixth Circuit, and the comment was made about Carter rather than Plaintiff. However, the Court need not analyze this comment in isolation, as Plaintiff has presented other evidence of discrimination, and Rimmer's comment does explicitly reference age as a positive factor in the context of evaluating a candidate's qualifications. On balance, the Court finds that the comment does qualify, albeit just barely, as direct evidence of age discrimination.

### D. The Age-Related Comment During Carter's Interview

Finally, Plaintiff briefly notes that James Carter's interview for the auto tech teaching position also included a direct reference to age. During Carter's deposition, he was asked if either Pipkin or Kilzer ever inquired about his age during the hiring process. (Carter Dep. at 101–02, D.E. 32-5.) Carter responded that he had been asked during his formal interview how old he was. (*Id.* at 102:4–5.) He could not, however, remember which individual, Pipkin or Kilzer, had asked the question, nor its exact wording. (*Id.* at 102–03.) Carter's best guess leaned

15

toward Kilzer as the speaker, with the remark worded as, "well, I see you're 42." (*Id.* at 102:23–24; *see id.* at 103:6 ("[I]t's something along the lines of that . . . .").)

The vagueness of Carter's testimony makes it difficult to meaningfully engage in the full rigor of analysis under *Cooley*. Nevertheless, because the age-related comment clearly related to the hiring action at issue and came from either the primary decision-maker (Pipkin) or an agent of Defendant who occupied a relevant "position of influence" (Kilzer), the Court finds that this evidence, at very least, "buttresse[s] other evidence of discrimination" alleged by Plaintiff. *Ercegovich*, 154 F.3d at 356; *see Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir. 1995).

### E. Other Arguments of the Parties

Defendant claims that Plaintiff was not selected for the position of auto tech teacher for reasons other than age, while Plaintiff claims that these alternative bases are pretextual, specious, or shifting justifications meant to conceal an actual discriminatory animus. In general, the parties argue at length in their respective filings under the circumstantial evidence framework. Because Plaintiff has presented direct evidence of age discrimination, the Court does not engage in a *McDonnell Douglas* analysis, as the two evidence paths are mutually exclusive. *Scheick*, 766 F.3d at 529. Nor it would be appropriate for the Court on summary judgment to "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## IV. CONCLUSION

Plaintiff has alleged, with adequate support at this stage, direct evidence of age discrimination. Taking it together with the other pieces of evidence presented, and viewing them in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could find that age was the "but-for" cause of the adverse employment action and return a verdict for the non-

16

moving party. Because a genuine dispute of material fact exists, summary judgment is not warranted.

For the reasons stated above, Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED this 31st day of October, 2016.

                                           s/ J. DANIEL BREEN
                                           CHIEF UNITED STATES DISTRICT JUDGE